UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

RUSTINE A. MCCORD,            :      CIVIL NO. **3:05-CV-2524**
                             :
          Plaintiff          :
                             :
     v.                      :      (Judge Munley)
                             :
JO ANNE B. BARNHART,         :      (Magistrate Judge Smyser)
Commissioner of Social       :
Security,                    :
          Defendant          :
                             :


## REPORT AND RECOMMENDATION


     The plaintiff has brought this action under the authority
of 42 U.S.C. § 405(g) to obtain judicial review of the
decision of the Commissioner of Social Security denying the
plaintiff's claims for disability insurance benefits and
supplemental security income.


**I.   Procedural Background**

     The plaintiff applied for disability insurance benefits
and supplemental security income on August 22, 2003, alleging
that she had been disabled since July 19, 2003.  (Tr. 53-56,
279-81).  The plaintiff's applications were denied initially.
She filed a request for a hearing.  (Tr. 27, 31-34).  A
hearing was held before an Administrative Law Judge (ALJ) on

January 10, 2005.  (Tr. 325-54).  The plaintiff, who was not represented, and a vocational expert testified.  (Tr. 325-54). On April 1, 2005, the ALJ issued a decision concluding that the plaintiff was not disabled under the Act.  (Tr. 9-19).

The plaintiff then retained an attorney, who submitted additional evidence along with a request for review to the Appeals Council.  (Tr. 290-324).  On January 20, 2006, the Appeals Council denied the plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (Tr. 5-8).  42 U.S.C. § 405(g).  The plaintiff filed this civil action for judicial review of the Commissioner's decision.  (Doc. 1).

## II.  Factual Background

The plaintiff, who was forty-nine years old at the time of the ALJ's decision, is considered a younger individual under the Regulations.  (Tr. 9, 53).  20 C.F.R. §§ 404.1563(c), 416.963(c).  She has a high school education and past relevant work experience as a cashier, courier, machine operator, and automobile mechanic.  (Tr. 84).  She last worked in July of 2003 as a cashier.  (Tr. 333-34).

The plaintiff told her primary care physician, James C. Miller, D.O., on June 20, 2003, that she had been having bad arthritis pain for the past month in her knees, feet, ankles, wrist, and upper arms.  (Tr. 117).  Dr. Miller noted subcutaneous nodules in the plaintiff's left forearm and some edema of the wrist and knees.  Dr. Miller prescribed the steroid Prednisone and tentatively diagnosed probable rheumatoid arthritis and rotator cuff tendonitis.  (Tr. 116). On July 1, 2003, Dr. Miller noted that the plaintiff was feeling much better.  Dr. Miller decided to reduce her Prednisone so as not to aggravate her hepatitis C, which she has had for twenty years.  Dr. Miller filled out forms supporting her application for Medical Assistance.  (Tr. 112, 115, 221).

Dr. Miller completed a form, dated June 27, 2003, for the Pennsylvania Department of Public Welfare in which he stated that the plaintiff was temporarily disabled from gainful employment for three months from June 27, 2003 until September 27,2003, due to rotator cuff tendonitis.  (Tr. 115).

On August 4, 2003, Dr. Miller reported that the plaintiff complained of hepatitis C, arthritis, and ear pain.  (Tr. 111).  He noted that her arthritis was possibly related to the hepatitis C.  The plaintiff complained that the Prednisone was wearing off and that she had arthritic pain of the right wrist and hand.  *Id.*  On August 29, 2003, Dr. Miller completed a form for the Domestic Relations Section of the Court of Common Pleas in which he stated that the plaintiff had been disabled since February 20, 2003, due to hepatitis C and degenerative arthritis of the knees.  (Tr. 108).  On October 1, 2003, Dr. Miller competed another form for the Department of Public Welfare stating that Plaintiff was temporarily disabled for five months, until February 1, 2003 [sic] due to a primary diagnosis of hepatitis C and a secondary diagnosis of rotator cuff tendonitis.  (Tr. 113).

At Dr. Miller's referral, Dr. Stanley J. Naides, a rheumatologist, examined the plaintiff on December 16, 2003, for complaints of arthritis of the knees, feet, wrists, and hands.  (Tr. 182).  Dr. Naides noted decreased range of motion of the wrists and left shoulder, "slight bogginess" of the metacarpal and finger joints, and a "very marked decrease in

4

abduction" of the left shoulder.  (Tr. 183).  He referred the plaintiff for hand occupational therapy and x-rays, and recommended that she continue Naprosyn for likely inflammatory arthritis.  *Id.*  X-rays of the plaintiff's hands showed perireticular osteopenia in the radiocarpal and metacarpophalangeal joints, small erosions consistent with inflammatory arthopathy, and an unremarkable left shoulder. (Tr. 184).

On March 10, 2004, Dr. Naides re-examined the plaintiff and noted that interferon antiviral treatment for her hepatitis C had been deferred until he had evaluated the treatment's possible exacerbation of the inflammatory process. (Tr. 245).  Dr. Naides recommended that the plaintiff initiate antiviral therapy and opined that lowering the plaintiff's viral load might decrease the inflammatory arthritis associated with high viral burden.  (Tr. 246).

On July 20, 2004, Dr. Naides noted that during examination that day, the plaintiff reported that she felt well.  Her arthritis has been controlled with Bextra and Prednisone.  She had initiated interferon treatment and was

5

tolerating it fairly well.  She had begun gardening.  Dr.
Naides noted slight tenderness in the trapezii, paraspinal
muscles, costochondral junctions, elbow epicondyles, and about
the knee joints bilaterally.  (Tr. 241).  Dr. Naides also
noted "mildly boggy" finger joints.  *Id.*

On September 27, 2004, the plaintiff reported muscle
pain, especially in her upper arms, that was more prominent in
her joints.  (Tr. 236).  Dr. Naides noted that the plaintiff
used wrist splints at night and upon examination reported
tenderness and mild swelling and the finger joints, metacarpal
joints, and wrists bilaterally.  (Tr. 236-37).

The plaintiff reported in her application that she was
limited in using her hands and in her disability report stated
that she had difficulty opening bottles, peeling potatoes,
cutting meat, and grooming her hair, which she had cut short.
(Tr. 69-73, 92).  The plaintiff testified that she has flare-
ups every few months where hand problems cause her to rely on
others to help her with personal care, such as dressing
herself, and she showed the ALJ that she could not fully
extend the middle finger of her left hand.  (Tr. 334-35).

6

When the ALJ asked the plaintiff if she would be able to use

her hands to sort or inspect items at a job, she replied that

she would not.  (Tr. 336-37).


**III.  Disability Determination Process**

The Commissioner has promulgated regulations creating a

five-step process to determine if a claimant is disabled.  The

ALJ must sequentially determine:  (1) whether the claimant is

engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment; (3) whether the claimant's

impairment meets or equals a listed impairment; (4) whether

the claimant's impairment prevents her from doing past

relevant work; and (5) whether the claimant's impairment

prevents her from doing any other work.  20 C.F.R.

§§ 404.1520, 416.920.


Here, the ALJ determined that: (1) the plaintiff had not

engaged in substantial gainful activity since her alleged

disability onset date; (2) the plaintiff's degenerative joint

disease of the left wrist and right knee, inflammatory

arthritis and memory impairment secondary to hepatitis C, and

depression were severe; (3) but did not meet or equal a listed

impairment; (4) the plaintiff could not perform her past relevant work; but (5) had the Residual functional capacity to perform less than the full range of sedentary work.  (Tr. 14-18).  Because the plaintiff had the residual functional capacity to perform sedentary work, and the vocational expert testified that a significant number of jobs the plaintiff could perform were available in the national economy, the ALJ concluded that she was not disabled under the Act.  (Tr. 17-18).  20 C.F.R. §§ 404.1520(c), 416.920(c).

**IV.  Discussion**

The plaintiff argues that the ALJ failed to: (1) address all of the plaintiff's limitations when determining her residual functional capacity; (2) address the plaintiff's treating physician's opinion of disability; and (3) adequately develop the record.

A.  Standard of Review

When reviewing the denial of disability benefits, we must determine whether the denial is supported by substantial evidence.  *Brown v. Bowen*, 845 F.2d 1211, 1213 (3rd Cir. 1988); *Mason v. Shalala*, 994 F.2d 1058 (3rd Cir. 1993).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360. (3d Cir. 1999). It is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

    B.  Whether the ALJ failed to address all of the plaintiff's limitations when determining her residual functional capacity

    The ALJ determined that the plaintiff could lift up to ten pounds occasionally and sit eight hours in an eight-hour day with a sit/stand option every half hour. She would need a working situation where she could avoid significant interaction with others. (Tr. 18). The plaintiff contends that the ALJ failed to take into consideration her fibromyalgia, adhesive capsulitis of the left shoulder, and bursitis in her elbows when making the residual functional capacity determination. (Doc. 9 at 11-14). The plaintiff contends that the ALJ failed to consider the upper extremity limitations these impairments impose. (Doc. 9 at 12).

9

An ALJ must consider each impairment shown by the record and address its impact on a claimant's ability to perform work activities.  20 C.F.R. § 404.1520; *Burnett v. Commissioner of S.S.A.*, 220 F.3d 112, 121-22 (3d Cir. 2000); *Bailey v. Sullivan*, 885 F.2d 52, 59-61 (3d Cir. 1989).  Even if the ALJ has determined an impairment to not be severe, he must still consider the impairment when determining a claimant's residual functional capacity.  20 C.F.R. §§ 404.1545, 416.945. *Burnett*, 220 F.3d at 120-22; *Bailey,* 885 F.2d at 59-61.  The plaintiff contends that the ALJ did not take into account her upper extremity problems, in the form of limitations on reaching, grasping, or handling abilities, when determining her residual functional capacity.

The record does contain evidence of the plaintiff's problems with her upper extremities.  The plaintiff reported limited ability to use her hands to Social Security, to the ALJ, and to her physicians.  (Tr. 69-73, 92, 111, 116-18, 181-87, 245-46, 334-37).  Her treating physicians, including a rheumatologist, provided objective clinical findings that corroborated those limitations including nodules on her hands,

10

markedly decreased wrist motion, bogginess in her fingers,

swelling, and tenderness.  (Tr. 181-87, 236-37).


In addition, Dr. Goodman, who examined the plaintiff at

the Commissioner's request, opined that she needs to "avoid

use of [her] left arm above waist level."[1]  (Tr. 193).  The

agency consultant who reviewed the plaintiff's record also

opined that the plaintiff had limited handling ability, a

finding the plaintiff points out the ALJ should have

mentioned.  (Tr. 64).  *See* Social Security Ruling (SSR) 96-5p

(stating that an ALJ "must" evaluate opinion evidence from

consultants).


Objective diagnostic studies also corroborate the

plaintiff's subjective complaints about her upper extremity

problems; accordingly the complaints were due great weight.

*Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

January of 2004 x-rays of the plaintiff's hands showed

periarticular osteopenia of the joints along with small

---

[1]  The plaintiff points out in her reply brief that while the
Commissioner addressed Dr. Goodman's report in her brief, the Commissioner
mischaracterized the limitation by describing it as "a limitation on lifting
her non-dominant left arm above her waist."  (Doc. 10 at 19). We agree with
the plaintiff's assertion that Dr. Goodman's opinion that she "avoid use of
[her] left arm above waist level" encompasses more than just lifting.  (Tr.
193).

erosions consistent with inflammatory arthropathy; an October

of 2003 x-ray showed degenerative changes in the plaintiff's

left wrist; and laboratory testing showed a highly positive

rheumatoid factor.  (Tr. 133-34, 184, 266).


When subjective complaints are "reasonably supported by

medical evidence, the ALJ may not discount a claimant's pain

without contrary medical evidence."  *Ferguson,* 765 F.2d at 37

(citing *Green v. Schweiker*, 749 F.2d 1066, 1070 (3d. Cir.

1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d. Cir. 1981).

Here, the ALJ did not cite contrary medical evidence with

respect to the plaintiff's upper extremity complaints but

noted only that Dr. Naides had opined that the plaintiff's

arthritis would improve when her hepatitis C treatment was

discontinued and that the plaintiff's treatment for her upper

extremity pain, medication and therapy, had been conservative

in nature.  (Tr. 16).  Thus, the plaintiff's corroborated

complaints were still due great weight.  *Ferguson,* 765 F.2d at

37.


The ALJ did not explain why he rejected the upper

extremity limitations suggested by Dr. Goodman and by the

state agency consultant.  (Tr. 64, 193).  *Burnett*, 220 F.3d at

121-22.  The Commissioner suggests that the ALJ must have

viewed Dr. Goodman's manipulative limitation as a temporary,

non-significant shoulder condition.  The ALJ did not state

such a view of the limitation found by Dr. Goodman.  The court

may not decide the appeal on the basis of speculation. (Doc.

10 at 18-19).  *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196

(1947); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir.

2001).


        The Commissioner contends that because the ALJ found that

the plaintiff had the residual functional capacity for

sedentary work, which by definition requires lifting only ten

pounds occasionally, the ALJ accounted for any potential upper

extremity limitations.  (Doc. 10 at 18).  This view of the

adjudication conflicts, however, with the vocational expert's

testimony that a limitation of occasional use of the hands, or

use for one-third of the day, would eliminate the jobs of

which the ALJ subsequently found the plaintiff capable.  (Tr.

351).  Thus, we find that the ALJ erred in not addressing

whether any limitation resulted from the plaintiff's upper

extremity problem.

13

C.  Whether the ALJ erred in not addressing the opinion of
the plaintiff's treating physician

        The plaintiff contends that the ALJ did not address the

opinions of Dr. Miller, her primary care physician.   The

opinions to which the plaintiff refers are contained in two

forms Dr. Miller filled out for the Pennsylvania Department of

Welfare on which forms he checked boxes indicating that the

plaintiff was temporarily disabled from June 27, 2003 to

September 27, 2003, and from October 1, 2003 to February 1,

2003 (sic), due to a primary diagnosis of hepatitis C and a

secondary diagnosis of rotator cuff tendonitis; as well as a

form Dr. Miller filled out for the Domestic Relations section

of the Court of Common Pleas of Dauphin County indicating that

the plaintiff was disabled as of February 20, 2003 and that it

was "uncertain when she can return to work."   (Tr. 108, 113-

15).


        Such opinions are not the sort of medical opinions to

which deference is due.   20 C.F.R. §§ 404.1527(d), 416.927(d).

All that these forms required was that Dr. Miller fill in

dates and diagnoses with no explanation or supporting

documentation.   (Tr. 108, 113-15).   *Mason v. Shalala* noted

that "[f]orm reports in which a physician's obligation is only to check a box or fill in a block are weak evidence of best" and are of "suspect" reliability, and do not constitute of themselves substantial evidence of a claimant's physical condition.  994 F.2d 1058, 1065.

Moreover, the opinions contained in the forms lack support in the record and conflict as to their time frames. The primary diagnosis Dr. Miller indicated on the Department of Welfare forms, hepatitis C, responded to interferon treatment and was in remission, according to the plaintiff, as of September of 2004.  (Tr. 215).  Dr. Siegelman reported that the plaintiff's liver had suffered only minimal damage considering her twenty-year infection with hepatitis C and that she had a good chance for remission with interferon therapy.  (Tr. 14, 179, 221, 223).   In addition, a claimant must be unable to work for at least twelve consecutive months in order to receive disability.  42 U.S.C. §§ 423(d), 1382c(a)(3).  Dr. Miller's opinions cover the time frames of June 27, 2003 to September 27, 2003; October 1, 2003 to February 1, 2004; and February 20, 2003 to an "uncertain" future date.  (Tr. 108, 113-15).  Only this last opinion

15

covers more than twelve months, yet it conflicts with Dr.
Miller's other opinions that the plaintiff's disability ended
on September 27, 2003, and February 1, 2004, respectively.
(Tr. 108, 113-15).

Treating source opinions indicating that a claimant is
disabled or unable to work are not entitled special
significance, but may not be disregarded.  SSR 96-5p.
("treating source opinions on issues reserved to the
Commissioner will never be given controlling weight" but "the
notice of the determination or decision must explain the
consideration given to [such] opinions.")  The ALJ's opinion
did not mention any of the three opinions provided by Dr.
Miller.  On remand, the Commissioner should provide some
explanation for the consideration he gave to Dr. Miller's
opinions.

The plaintiff submitted to the Appeals Council an
additional form opinion in which Dr. Miller indicated that the
plaintiff was unable to work from October 1, 2003 through
"continued."  (Tr. 311).  Because we are already recommending
remand for other reasons, we need not decide whether this form

16

warrants remand under 42 U.S.C. § 405(g). *See Reefer v. Barnhart,* 326 F.3d 376, 381 (3d. Cir. 2003) (stating that when remand is warranted for other reasons, the court need not also determine whether to remand for consideration of new evidence per the *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001), analysis of whether such new evidence is material and the plaintiff had shown good cause why it was not previously presented); *Szubak v. Secretary of Health and Human Services,* 745 F.2d 831, 833 (3d Cir. 1984)(explaining that, under 42 U.S.C.§ 405(g), the requirement that evidence be new and material is to support the remand action)(emphasis added). We think it advisable for the ALJ to also consider this November 2004 form, in order to get a fuller picture of Dr. Miller's opinion and to consider how the dates of disability identified by Dr. Miller therein might provide illumination to the conflicting dates of disability in his three other opinions.


   D.   Whether the ALJ failed to adequately develop the record

       The plaintiff's last argument, to which the Commissioner did not respond in her brief, is that the ALJ failed to obtain the previously discussed updated evidence from Dr. Miller

along with a November 2002 x-ray of the plaintiff's right
wrist showing degenerative changes; a January 2005 report from
Dr. Naides regarding the plaintiff's claims of inflammatory
arthritis flares; and other treatment records from Dr. Miller.
(Tr. 301-03, 304-17).  In addition, while not producing for
the Appeals Council or indicating that such evidence more than
theoretically exists, the plaintiff contends that the record
is also missing an initial evaluation and opinion from her
psychiatrist as well as therapy records from her
psychotherapist.  (Doc. No. 9 at 17).


When a claimant, as here, is unrepresented at the
hearing, the ALJ has a duty to develop the record with special
care.  (Tr. 327).  *Early v. Heckler*, 743 F.2d 1002, 1008 (3d
Cir. 1984); *Dobrowolsky v. Califano*, 606 F.2d 403, 407-09 (3d
Cir. 1979); *Jozefick v. Shalala*, 854 F.Supp. 342, 347
(M.D.P.A. 1994).  At the same time, when a claimant has been
informed of her right to counsel before an administrative
hearing and, as here, knowingly waives it, her lack of
representation is not, of itself, cause for remand.  (Tr. 12,
328).  *Dobrowolsky*, 606 F.2d at 407.  "Lack of counsel is
sufficient cause for remand only if supported by a showing of

clear prejudice or unfairness at the administrative hearing."
*Id.*

A review of the hearing transcript does not indicate that
the ALJ left the responsibility to cross-examine the
vocational expert up to the plaintiff, *Dobrowolsky*, 606 F.2d
at 408 n.15, or otherwise took a passive role in the
proceedings.  (Tr. 327-34).  Thus, it does not appear that the
ALJ treated the plaintiff unfairly.  Furthermore, the
plaintiff's contentions about what the missing evidence would
have shown do not suggest gaps in the record that resulted in
"unfairness or clear prejudice."  *See Jozefick v. Shalala,* 854
F.Supp. 342, 348 (M.D.P.A. 1994)(quoting *Edwards v. Sullivan*,
937 F.2d 580, 585-86 (11th Cir. 1991)(stating "the question is
not 'whether every question was asked which might have been
asked had [the claimant] been represented by an attorney,
[but] whether the record reveals evidentiary gaps which result
in unfairness or clear prejudice.'")

The plaintiff contends that the records the ALJ did not
obtain further document her flares of her inflammatory
arthritis.  (Doc. 9 at 18).  She also suggests that the

missing mental health treatment records would have shown more detail about her mental impairments, which the ALJ found severe but resulting only in a limitation on the plaintiff's ability to interact with others.  (Tr. 18).  We have already recommended remand for the ALJ to further consider the plaintiff's upper extremity limitations and his related findings and reasons.  What the plaintiff suggests of the additional evidence would serve only to provide further documentation of the same, not to fill in "evidentiary gaps resulting in unfairness or clear prejudice."  *Jozefick,* 854 F.Supp. at 348.  With regard to the plaintiff's additional mental health records, she asserts only that they were "relevant."  (Doc. 9 at 19).  Accordingly, we do not recommend that the ALJ obtain additional records, with the exception of the additional November 2004 opinion from Dr. Miller which the plaintiff submitted to the Appeals Council.

## V.  Conclusion

On the basis of the foregoing, it is recommended that the appeal of the plaintiff be granted and the case remanded for further action consistent with this report.


                                       ***/s/ J. Andrew Smyser***

_____  J. Andrew Smyser
                                           Magistrate Judge

Dated:  May 30, 2006.